Good morning, Your Honors. Dennis Winters here on behalf of the Debtor and Appellant Benjamin Taylor. This all involves the 727-A, and that is a very harsh, it's a harsh penalty that's brought against a debtor. It's the ultimate civil penalty. Congress mitigates that by requiring a strict compliance with the Debtor and Appellant. provisions of the law. I would submit that the bankruptcy court, in its decision, failed to follow that strict mandate of the law, and that the evidence presented was not in support of what was required for that mandate. It's important to note here, I think, that the trustee did not join in this matter. He did not file a complaint. He did not testify. He did not administer the assets that were alleged to have been... Why does that matter? Because the whole provisions of, particularly A-4, well, of both provisions, in A-2 it says that the intent has to be to hinder or delay. It certainly did not hinder or delay anything. Why? Perhaps the trustee just decided that he didn't want to spend his assets pursuing this matter while it was being pursued by the creditor. I mean, it seems to me that's a nice jury argument if you're arguing to a jury, but there's no legal consequence from the trustee participating, is there? He doesn't have to, but the law says that there has to be... Does the law say that the trustee's failure to join is of consequence? It doesn't say that. What it does say is that there has to be some indication that there was a hindering or delay of the proceeding. Now, I understand that argument, and you make it in your brief. I'm just trying to figure out what difference it makes whether or not the trustee decided to join, and there's no case law on that to that, is there? No, but there is also no evidence that he was hindered or delayed. I would anticipate in most of these cases, you bring the trustee up to testify, even if he does not join, you bring him up to testify and say, oh, I had to spend all this amount of time investigating this issue. But what about the creditors? Well, again, Your Honor, this involves creditors who were pursuing this, but the asset was not an asset of the estate. Well, that's a separate question. I understand. I understand on bankruptcy cases where I was dumbfounded that the trustee didn't appear. In fact, in one case, we had essentially asked him to appear. And if this had been something that was really valuable, I think that probably the bankruptcy judge would have asked him to appear. But doesn't the statute require there to be actual hindrance or defrauding? It just requires that there be an intent to hinder or defraud, correct? Well, under A2, that's correct. And that's all you need. So just focusing on A2 for a moment, there doesn't have to be a hindrance. It only has to be that the debtor acted with the intent to hinder, correct? Correct. But I think that where these two intersect is the fact that you have to say that he intended to hinder or delay, but how could he have hindered or delayed if the... He doesn't have to actually hinder or delay. He only has to intend to hinder or delay. Intend to hinder or delay if the... He knows, certainly he knows what's in that bank account of the corporation he had an interest in, and there's virtually nothing there. Well, but there was... See, one of my problems with that argument is that when I look at the account, just looking at the month before the filing and the month of the filing, there's not nothing there the entire time. There's just nothing there when they finally catch up to him. There's thousands of dollars going in and out. Yes, but all that money was not his money. That money was of another corporation that was using that account. Well, some of the money went out to him to pay for things. Netflix didn't seem like a corporate activity. No, and I understand that. He didn't pay some personal expenses. He did pay his house payment, and then he accounted to that with the IRS as to that that was his compensation. He accounted to lots of folks other than the bankruptcy proceedings, right? Yes, but the case law on it, I have no case that says that simply because you use a bank account that's the corporation, that that bank account is for personal expenses. In fact, there's case law, the FADER case, that says exactly the opposite. But that was... There's a little difference here. Here we have somebody who's asked in a creditor's exam or proceeding, is there an account at this bank because of this other corporation? And your client says no. And then later on, we discover that there is, and money is moving in and out of it at the time. Whether or not that shows materiality, which is the A4 requirement, it's a separate issue, why aren't those facts sufficient, given our standard of review, to allow the bankruptcy judge to determine that there was an intent to hinder or delay? Well, I think that's a different issue than whether he used the account for personal expenses. But I think the reason you can't use that is that that bank account was not his bank account. It was a corporation bank account. Well, it's in his name. He's the signatory. He's the signatory. And he testifies that the reason he set up that account was to avoid creditors of other accounts because they were already liened. I don't, what it was is that banks, the banks had, Bank of America, I'm sorry, it was Wells Fargo, I think his testimony was they closed the accounts because of all the liens and the levies on the account. And the only way to open an account, and they would not open new accounts for him, so he had, oh, this other corporation, they will open the account. It wasn't the fact that he was afraid to put money in that account and it would be levied upon. It was already done. He was in control of that corporation. He was in control. He was, yes, he was signatory on the account. Yeah, he was in control of it and he could do whatever he wanted with it. He could. He did. He could. But, again, under the Thurman case, which has been followed by every single case that has cited it, says that even if he controls that corporation, even if he is the individual signatory on the account, that still is not a case in which you can use A-2 to deny it. It has to be property of the debtor or the estate. And this case was neither. But he did deposit personal checks and he used it to pay personal debts. So why isn't that distinguished, Thurman? First off, that's a different situation, but I don't think it does because. Answer Judge Wardle's question. Didn't he deposit his own funds into that account? Most of the funds that were. Not most, some. Didn't he deposit some of his own personal funds into that account? I don't know that there is evidence directly on that point. That was the allegation. But the checks that I saw were from his mother-in-law who deposited them in the account. Yes, it was. Made out to him. Made out to him, no, to Taylor Transportation. I think all the other checks that were to him personally were for business assets. The other business corporation, one of the people does say, I don't know who the corporation is, but let's make them out to Ben Taylor. But it was still corporation money. Didn't the district court, the bankruptcy court, make a finding of fact that there was an intent to hinder or delay? So we have a check made out to him that goes into the account and then he takes money out of the account to pay personal expenses. And he says, oh, no, this is all corporate. But the bankruptcy court's entitled to find differently, is it not? Yeah, but I don't think the bankruptcy court simply said it was because he said he didn't have a bank account and that this corporation did not have a bank account. It did not go into detail in terms of what he deposited in there. And I think that's one of the problems with the findings is there are hundreds of checks over the period of time and deposits, but there's only a couple of these. And why weren't these pointed out? And so that we could argue that and deal with it. There was no, nothing was pointed out in the findings as to these checks, except the fact that, yes, that one, these checks that came from the mother-in-law, which was her money, put into that account and then immediately paid over to creditors on the house. That is what happened on it. And I think the clear language of that law is that it has to be property of the debtor or the property of the estate. And that's similar law in other sections. You could just basically conceal property in a corporation which you're effectively in control of, and it's not your property for these purposes. Is that your argument? My argument is, as I indicated, both the Thurman case and the Fader case, either way you go look at it, just because they're using a corporate account is not the basis for denial. That's just a statement in the abstract. He's using the corporate account for all practical purposes, in this case the equivalent of his personal bank account. That's how he's using it. And he denied the existence of it when he testified. And you're saying there isn't any evidence of intent? I think there's no evidence of intent as to his personal, his property, or as to the estate's property. I don't think that there is any findings as to that issue. Well, there's a finding. There's a finding of fact by the bankruptcy judge, I'm sorry, I keep saying that, that defendant used the funds from this bank account for his personal expenses. Is that finding supported by the evidence? Yes, he did pay his house payments and some small bills with that bank account. Cell phone, Internet, TV, water, and electricity, and payments to Kohl's, Netflix, Redbox, Amazon, Groupon, and Experian. I mean, he's basically using it as a personal bank account. I suspect that 90% of it was actually business expenses that were paid out of it, but yes, he did pay some personal expenses out of it. But again, that's very similar to what's happened in Thurman, and it's almost exactly what was happening in the Fader case, which is also cited in there. Aren't those cases in which somebody received compensation from a corporation? No. In fact, in the Fader case, it said because after he got a judgment against him, he decided to start using, putting all his money into the corporate account and use it rather than use his personal account. So that's not a basis for non-dischargeability. That's as I read the Fader case. And again, this language is used in other sections of the bankruptcy code. In Section 544B and 548A, both of them say it has to involve property of the debtor or the estate, and in each case, the rulings by the courts have been that it has to be actual property of the state and not property of a separate entity. And I think that the fact that there was that when you see lots of money going through the account, but when you actually see what's happening is this money is going to pay business expenses in most cases, and that there was very little balance kept in the account at any given time is another issue of whether there was intent to hinder and delay. Obviously, Mr. Taylor has had bad accounting and bad bookkeeping. He had reached a point before he filed, sometime before he filed, in which he was basically himself was operating, trying to operate the business without a bookkeeping. Is that an excuse for lying under oath? He said the questions were confusing? They were confusing, Your Honor. Confusing? Because there were three people asking him questions, one on top of each other. But he didn't even list it on the schedule that he filed. No, he did not list it. He required to list it on the schedule. Well, it was a corporation, but as his indication was, that all the money in that corporation belonged to a government corporation, the Taylor Concrete, which he did list. But he personally was a signatory to the account. Pardon me? He was personally a signatory to the account, which required him to list it on the schedule when he filed for bankruptcy. I think that's what the Thurman case comes down on, is that just because you don't have to list the bank account of a corporation on it, as to the Taylor Transportation Corporation itself, no, he did not list it on the schedules, but then he did fully disclose that it was a corporation that he owned an interest in at the 341A hearing. In the Thurman case, did the debtor actually transfer and conceal his actual personal property? Yes. Isn't that what distinguishes this case? I don't believe so, Your Honor. I think that, in fact, in that case it was exactly the same thing, that he had bank accounts and was making transfers of money with that bank account from Thurman, doing exactly the same thing that Mr. Taylor was doing. I want to ask you a procedural question. There was a trial here. Yes. And your client testified. Yes. And the judge didn't believe him? Yes. Because if he had, he would have found that he didn't act with the intent to hinder, delay, or defraud. His findings orally on the record were simply that, well, he didn't tell the truth about the savings. No, he says the judge finds the defendant with the intent to hinder, delay, and defraud. So what you're saying is that the judge is, that that was clear error? I think he's, in his oral findings, he said, I'm not making any ruling on defraud. He's clearly said that. But I'm reading the judge's findings of fact and conclusions of law dated September 1, 2015. Defendant with the intent to hinder, delay, and defraud, used the bank account and did what he says he did. Are you saying that we should overturn that finding of fact because there was no evidence to support it? As to defraud, yes, Your Honor, because it is. But how about hindering delay? Again, only to the extent that it was saying that he was hindering, he found that there was hindering delay as to not putting a non-debtor account in. But that, you know, I disagree with that ruling, but I don't think that's necessary to the decision. All right.  Thank you, Your Honor. I present counsel. Good morning, Your Honors. Michael Wallen for Plaintiff and Appellee Karen Good. Non-dischargeability actions are fact-intensive, and no two cases are exactly the same. And this case in particular was quite fact-intensive. As Your Honors are aware, this went to trial. Ms. Good testified, Mr. Taylor testified, and Judge Barry Russell, who's probably presided over hundreds or maybe even thousands of these types of actions, concluded that discharge should be denied under 727A2A, A2B, and A4. There was no clear error committed. With respect to Mr. Taylor's intent, his fraudulent intent or his intent to hinder or delay can be inferred. It was definitely within Judge Russell's discretion to infer that intent. Several, if not all, of the badges of fraud were present. And with respect to – Let me talk about A4 for a second, which requires materiality. Is there enough involved in these transfers to qualify? Would it have made a single bit of difference in the plan of reorganization had he disclosed all these in the beginning? First, Your Honor, I believe it was a Chapter 7 case in which there would have been no plan of reorganization. I mean, the final judgment. I'm sorry. Right. I believe that the – We're dealing with a few thousand bucks, aren't we? At trial, there was evidence presented that there was hundreds of thousands of dollars that was deposited into this account of Mr. Taylor's or his entities in the years and the months leading up to the bankruptcy filing. So there was a lot of money coming in and out of the account. So you're saying that you might have been able to upset transactions that occurred before? You could potentially have upset transactions that were occurring before. Had Mr. Taylor been honest in his schedules and honest in his media creditors' testimony, it may have led the trustee to understand that Mr. Taylor was, in fact, still in business doing the same thing, whereas he led – he caused the trustee to have the impression that he was no longer operating because there was no accounts that were active. Here's why I ask the question. All the money that flows through the account goes back to Mr. Taylor, right? In one way – that you're concerned about. The only money that you're concerned about is the money that goes back to him, are you not? In some form or another, either to his company or to him. My client, a creditor, other creditors, and the trustee would be concerned with whatever assets Mr. Taylor – they could go after to pursue. Right. You're not claiming that he preferred other creditors to your client. I don't think there's any evidence that he did. No. So at the end of the day, what's left? You conducted discovery, and what was left was $800. What was left, as of whatever that snapshot in time was, was that some snapshot in time, at the end of certain months, there was a small balance left in the account. Who knows what sort of preference actions could have been pursued, fraudulent transfer actions could have been pursued, levies could have been pursued. We were deprived of the ability to do some of that stuff or even do that investigation because he disclosed – he failed to disclose this asset. I think that there's an incorrect kind of bright-line distinction that Mr. Taylor's counsel is trying to make. There's no distinction between whether a nondisclosed asset is an asset of the debtor versus a nondebtor entity. The A-4, what matters is materiality. And in this case, there was a lot of money being deposited into an undisclosed account that he point-blank lied about, and the amounts going in and out were material. And so his failure to – he failed to disclose something that clearly was material, and that's what Judge Russell concluded. But if we find that the judge was correct on A-2A, we won't have – we don't have to get to A-4, right? If his discharge is denied under any 727 section, his discharge is denied. A discharge denied on A-4 is – at A-2 is no greater than a discharge denied on A-4. That's correct. It's just a denial. That's correct. It's just a denial of discharge. But the BAP found that Ms. Goode had proved that hundreds of thousands of dollars flowed in and out. So if you had discovered this like at an earlier point in time, you may have – there might have been hundreds of thousands of dollars instead of the few hundred dollars. It's possible. I agree, and we just don't know, unfortunately. And that's why – and it's difficult to know what would have happened had the debtor been honest. That's why in the Retz case, the court stated, quote, lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy. It's very difficult to know what would have happened in the absence of the concealment or the fraud or the hindrance. Something must have happened that was not good for him. Otherwise, he would have lied. He wouldn't have lied. I would think so, Your Honor. It would be a motive for the lie. I also think it was – the Bankruptcy Appellate Panel concluded that by concealing the TTI account and the flow of his money, Mr. Taylor created a false impression about his financial condition and the value of his business. A bankruptcy trustee and creditors only have limited information to go on in a bankruptcy case. And the schedules have to be honest because if not, they don't tell the right story. And these schedules and his 341A testimony gave the impression that he was not in this business at all and that he had very little money coming into his business or to his life period, and that just wasn't the case. And so it wasn't just a matter of how much money was in the account as of the date of bankruptcy filing, meaning how much the trustee could have grabbed from the bank on the date of filing. It was also his overall capacity to pay in the future, you know, just how he was doing generally business-wise. And that's all I have unless Your Honors have any other questions. No, we don't. Thank you. We could have a minute for rebuttal. Very quickly, Your Honors. First, to clarify, there were oral findings and there were written findings. The oral findings are what the judge stated on the record. The written findings were what plaintiff's counsel, previous counsel, submitted to the bankruptcy judge, and he signed them. So there is a conflict in those two. Is there a conflict or is it just I'm not, where's the conflict? The conflict is he specifically said repeatedly, and I think I quoted it in the brief, that he was not making any finding of defraud. That's a requirement of A-4. No, A-4, it's hinder. No, A-2. I'm sorry. For A-2, it's not a requirement. You agree? Right. But A-4, it is a requirement. So he's saying, yeah, I'm not making that finding. But then he never, he also. Don't we have clear law in the circuit that the written findings prevail over the oral findings? No, I think the actual rule is that if there's a conflict, you look at the context, and generally you would, well, you would generally look at the written findings when the written findings were submitted by one of the parties and they conflict with the oral findings, then they are suspect. Do you agree that A-4 doesn't matter if we find A-2? Affirm A-2? I agree that a denial of discharge is a denial of discharge. But I'd say that, again, the materiality there is, I think, the statements made by counsel that, oh, they might have found millions of dollars. Within a couple of weeks after this 341A, we spent a whole day in a deposition in which much of it was going over everything that went in and out of that account, and the trustee's counsel were sitting right there across the table from me and never pursued any of that. So I don't think that the fact that there may have been something that would have been found if he had revealed it in December but in January it was gone, there's simply no evidence or nothing that was submitted to the judge and no finding by the judge as to materiality. All right, thank you, Counselor. Thank you, Your Honor. Taylor, if you're good, will be submitted, and this session of the court is adjourned for today. Thank you.
judges: Wardlaw, Hurwitz, Korman